**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTA PRODUCTS INC., and DANA MCCURNIN, | No. C 05-02274 CRB |
| Plaintiffs, | |
| v. | |
| ANDREW DYAKON, | |
| Defendant. _____/ | |
| BETTA PRODUCTS INC., and DANA MCCURNIN, | No. C 06-2417 CRB |
| Plaintiffs, | **ORDER DISMISSING CASES FOR A FAILURE TO PROSECUTE** |
| v. | |
| RICHARD SHINDLE, | |
| Defendant. _____/ | |

Now pending are Orders To Show Cause why the above actions should not be dismissed for a failure to prosecute. After carefully considering the parties' responses, and considering the entire record in these cases and related case 05-2273 CRB, the Court DISMISSES the above actions with prejudice pursuant to Federal Rule of Civil Procedure 41.

## BACKGROUND

Plaintiff Betta Products, Inc. ("Betta") was engaged primarily in the design, production, importation and sale of consumer party goods.

### A.  The filing of the related cases

On April 15, 2003, Betta filed a petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Northern District of California.  One year later, Betta filed an action in Sonoma County Superior Court captioned <u>Betta Products, Inc. v. Transglobal Communications, Inc., et al.</u> (hereinafter the "Sonoma Complaint.").  In the Sonoma Complaint Betta accused Transglobal Communications, Inc. ("Transglobal") and other individual defendants of misappropriating Betta's trade secrets.  On January 21, 2005, Betta unilaterally dismissed its Sonoma Complaint.

On April 15, 2005, Betta and the bankruptcy trustee (collectively "Betta") filed a second complaint against Transglobal and other individual defendants in the bankruptcy proceeding, Adversary Case No. 05-01047 AJ.  On June 3, 2005, Betta filed a motion to withdraw the reference of <u>Betta v. Transglobal</u> to this Court, which this Court granted.  <u>Betta v. Transglobal</u>, 05-2273 CRB.

Also on June 3, 2005, Betta filed a motion to withdraw the reference in an action Betta filed against a former officer, Andrew Dyakon.  The case, 05-2274, was assigned to a different judge in this District.  The parties stipulated to relating the <u>Dyakon</u> case, 05-2274 to the <u>Transglobal</u> case, 05-2273 CRB, and <u>Dyakon</u> was therefore reassigned to this Court.

Betta subsequently filed another motion to withdraw the reference in an action against a different former officer, Richard Shindle.  <u>Betta v. Shindle</u>, 06-2417.  The action was assigned to a different judge in this District.  The parties stipulated to relating the <u>Shindle</u> action to the <u>Dyakon</u> action.  Betta represented that <u>Shindle</u> and <u>Dyakon</u> both allege similar counts of fraud, breach of fiduciary duty, conversion, and approving and receiving improper corporate distributions.  The action was accordingly reassigned to this Court.

Since <u>Dyakon</u>, 05-2274 had been related to <u>Transglobal</u>, 05-2273, and Shindle had been related to <u>Dyakon</u>, 05-2274, all three cases are related.

**B.     Betta's prosecution (or lack thereof) of its lawsuits**

**1.     <u>Betta v. Transglobal</u>, 05-2273 CRB**

On November 28, 2005, Betta filed its Third Amended Complaint. Betta's Third Amended Complaint made nine claims for relief against Transglobal and five former Betta employees, including claims for violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 et seq.), breach of fiduciary duty, unfair competition, slander and interference with actual and prospective economic advantage.

At a case management conference held in September 2006 the Court set a February 2007 hearing date for a summary judgment motion addressing whether Betta has any trade secrets. By stipulation the parties continued the summary judgment deadline to March 30, 2007, and then again to May 25, 2007, and then again to October 19, 2007. With the last continuance the Court directed that it would not grant any further continuances, even if stipulated.

Betta never produced any evidence of trade secrets; instead, on August 31, 2007 Betta moved for voluntary dismissal without prejudice. The Court granted the dismissal with prejudice in light of the age of the case. Defendants subsequently moved for attorneys' fees and costs pursuant to California Civil Code section 3426.4 and/or for vexatiously multiplying the proceedings pursuant to 28 U.S.C. section 1927.

In support of its opposition to the motion for fees, Betta offered the declarations of its counsel. Counsel represented that Betta ceased conducting any business in mid-2006 and no longer had any employees. Counsel also represented that the creditors litigation trust, the entity pursuing the matter, "has been completely dependent upon the records and personnel of Betta to prove different elements of this suit." Declaration of Laura Portillo, 05-2273 CRB Dec. 3, 2007, ¶ 23. After Betta ceased operating all of its records "were placed in storage, and the people who had knowledge of the contents of these records were no longer available to the Committee to prosecute this lawsuit." Id. ¶ 25 (emphasis added). Counsel continued:

> Betta's employees and its corporate records comprised key evidence relating to the claims in this law suit and now, with the passage of time, the loss of so

3

1
2
>many employees and the re-sorting and stay of Betta's documents, Plaintiffs can no longer marshal the evidence necessary to prove the claims alleged in the Amended Complaint.

3
4
>This became apparent to [plaintiffs' counsel] when the Defendants noticed the person most knowledgeable depositions last spring and the trust was unable to locate any person who had firsthand knowledge of Betta's corporate records.

Id. ¶¶ 27-28; see also Declaration of Dennis Walsh, 05-2273 CRB, December 4, 2007 ¶ 6 ("all of Betta's former personnel have moved on and there is [sic] no available witnesses to testify and locate and authenticate documents and otherwise assist in proving Plaintiffs' case"). As a result, and due to limited resources, Betta voluntarily dismissed the Transglobal matter. Portillo Decl., 05-2273 CRB, Dec. 3, 2007, ¶ 28-30. The Court relied on counsel's representations in finding that Betta had not acted in bad faith and denying the motion for attorneys' fees and costs.

### 2. **Betta v. Dyakon, 05-2274 CRB**

After Betta v. Dyakon, 05-2274 CRB was reassigned to this Court in October 2005 as related to the Transglobal matter no docket activity occurred until the Court issued its Order To Show Cause other than a substitution of defendant's counsel in January 2008. Betta concedes that during the past three years it has not conducted any discovery in this action, although it emphasizes that in early 2006 it responded to defendant's written discovery. In January 2008, defendant wrote Betta suggesting a possible resolution of the action. The record demonstrates that Betta did not respond or even acknowledge the communication.

### 3. **Betta v. Shindle, 06-2417 CRB**

After Betta v. Shindle, 06-2417 CRB was reassigned to this Court in June 2006 no docket activity occurred. Accordingly, on May 5, 2008, and in light of Betta's representation that there is no one available who is knowledgeable about Betta's records, the Court sua sponte dismissed the case for a failure to prosecute. Upon Betta's motion, the Court vacated the dismissal and ordered Betta to show cause why 06-2417 CRB should not be dismissed pursuant to Federal Rule of Civil Procedure 41 as a result of a failure to prosecute. Betta responds that the docket does not reflect that it propounded written discovery on defendant in

4

1  March 2007 and responded to defendant's written discovery in April 2007.  It was preparing
2  to notice the deposition of a third party when the Court issued its order in May 2008.
3  Defendant served a Federal Rule of Civil Procedure 68 Offer of Judgment on Betta in
4  June 2007, but the record before the Court reflects that Betta never responded or even
5  acknowledged the Offer.  In January 2008 defendant's counsel wrote Betta about a possible
6  resolution.  Again, Betta did not respond or even acknowledge the communication.

**DISCUSSION**

The Ninth Circuit requires

> the district court to weigh five factors to determine whether to dismiss a case for lack of prosecution: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

In re Eisen, 31 F.3d 1447, 1451 (9th Cir. 1994).  Here, each factor weighs in favor of dismissal.

The public's interest in expeditious resolution of litigation weighs in favor of dismissal.  Betta's three-year failure to take any action to prosecute the Dyakon action, and its failure to take any affirmative action in the Shindle matter, other than propound some written discovery more than one year ago, are unreasonable.  Id. at 1452; In re Osinga, 91 B.R. 893, 895 (9th Cir. BAP 1988) (holding that a 29-month delay was unreasonable).

The unreasonableness of Betta's inaction is even more apparent when Betta's excuse is considered.  Betta explains that it did not take any action to prosecute these actions because it had and has limited financial resources due to its bankruptcy and the June 2006 cessation of business operations.  Declaration of Laura Portilla, 06-2417 CRB, May 14, 2008, ¶¶ 6,12; Declaration of Laura Portilla, 05-2274 CRB, June 19, 2008, ¶¶ 8,12.  Betta, in effect, decided to prioritize its limited resources and chose to prosecute two other actions: the voluntarily-dismissed Transglobal matter and another bankruptcy court adversary proceeding which resulted in a judgment against Betta after an April 2008 trial.  The Ninth Circuit, however, has squarely held that a plaintiff's lack of financial resources does not excuse a delay in prosecuting an action.  In re Eisen, 31 F.3d at 1452.  The same is true for Betta's

5

1  explanation that the number of attorneys at its counsel's law firm decreased from six to three
2  in mid-2007.  If a plaintiff's chosen law firm no longer has the ability to prosecute an action,
3  a plaintiff is obligated to retain new counsel; it may not abandon its responsibility to proceed
4  simply because its chosen counsel is too busy with other matters.

5  Moreover, Betta has not produced any evidence that suggests that these actions will be
6  "expeditiously resolved" in the near future.  In re Eisen, 31 F.3d at 1452.  It has not taken any
7  depositions, and has only recently begun to prepare for the deposition of a critical third-party
8  witness.  Betta offers no evidence that this deposition will result in evidence sufficient to
9  prosecute this action.  This omission is especially critical given that Betta represents that (1)
10 these actions are document cases, that is, they are based on Betta's own corporate records,
11 and (2) it is unable to locate any person who has firsthand knowledge of Betta's corporate
12 records.  Portillo Decl., 05-2273 CRB, Dec. 3, 2007, ¶ 28; see also Walsh Decl., 05-2273
13 CRB, Dec. 4, 2007, ¶ 6 (testifying that there are no witnesses available to authenticate
14 Betta's corporate records).  Indeed, with respect to the two actions that Betta prioritized over
15 these actions, Betta eventually voluntarily dismissed one because it could not marshal the
16 evidence needed to prove its claims, and the other resulted in an adverse judgment with the
17 trial court noting that Betta did not have any witnesses who could provide the evidence
18 necessary to prove its claims.

19 The next factor –the Court's need to manage its docket–also weighs in favor of
20 dismissal for the reasons explained above.  See In re Eisen, 31 F.3d at 1452 (noting that this
21 factor is usually considered in conjunction with the public's interest in expeditious resolution
22 of litigation).

23 The risk of prejudice to defendants also weighs in favor of dismissal.

24 > The failure to prosecute diligently is sufficient by itself to justify a dismissal,
25 > even in the absence of a showing of actual prejudice to the defendant from the
   > failure. . . . The law presumes injury from unreasonable delay.  However, this
   > presumption of prejudice is a rebuttable one and if there is a showing that no
26 > actual prejudice occurred, that factor should be considered when determining
   > whether the trial court exercised sound discretion.
27

28 In re Eisen, 31 F.3d at 1452-53 (internal quotation marks and citation omitted).  Betta has the
   burden of rebutting the prejudice presumption.  Thus, Betta's argument that defendants have

6

failed to rebut Betta's "claim" of lack of prejudice, Reply at 2, is wrong. See In re Eisen, 31 F.3d at 1453 (holding that the rebuttable presumption of prejudice "refutes . . . the unsupported contention that delay alone, regardless of actual prejudice, does not necessitate a dismissal for failure to prosecute.") (internal quotation marks omitted). It is only when the plaintiff has an explanation of its delay "that is anything but frivolous" does "the burden of production shifts to the defendant to show at least some actual prejudice." Id. at 1453. (internal quotation marks and citation omitted).

Betta has not rebutted the presumption of prejudice. It does not have a non-frivolous excuse for its delay; a plaintiff is not permitted to simply choose which among several cases it has filed it wants to prosecute first. Moreover, the record reflects that defendants have suffered actual prejudice due to Betta's delay. These cases involve events that occurred six years ago. Since that time–and after Betta filed these lawsuits–Betta has ceased operations, terminated all of its employees, and placed all of its documents in storage. While Betta claims that all the relevant documents have been produced, it has also represented to this Court that it no longer has available anyone with first hand knowledge of Betta's corporate records. Betta has not explained how defendants can fairly defend themselves if Betta cannot produce anyone with knowledge of the records on which it bases its claims.

The public policy favoring disposition of cases on the merits only slightly favors not dismissing these actions. Given that Betta had to dismiss the "higher priority" Transglobal matter due to a lack of evidence, and it lost the other "higher priority" action because it did not have sufficient evidence of its claims, it appears unlikely that these cases will be resolved on the merits if the Court allows Betta to go forward. Nonetheless, this factor is a reason not to dismiss.

The final factor–the availability of less drastic sanctions–weighs in favor of dismissal. Betta does not suggest any less drastic sanctions and the Court is aware of none. The Court considered whether to allow Betta to proceed on the condition that it would pay defendants' attorney's fees if it turns out critical evidence has been lost or Betta once again ends up voluntarily dismissing because of the lack of evidence. At oral argument, however, Betta

1  admitted that it does not have any monetary resources and thus could not satisfy any
2  attorney's fees award or other monetary sanction.

## CONCLUSION

After carefully considering all the evidence and argument in the record, and having weighed the relevant factors, the Court finds that Betta's failure to take any action to prosecute the <u>Dyakon matter</u>, its failure to take more than minimal action in <u>Shindle</u>, its refusal to even respond to defendants' communications in both cases, and its representation under oath that its does not have anyone available with firsthand knowledge of its corporate records, warrants dismissal of these related actions with prejudice pursuant to Federal Rule of Civil Procedure 41.

**IT IS SO ORDERED.**

Dated: June 24, 2008



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\2417\finalorderofdismissal.wpd          8